We'll move to our fifth case of the morning, United States v. Anthony Flanagan, appeal number 212972. Mr. Henderson, welcome back. I see Mr. Wood. May it please the court, I'm Peter Henderson again, this time on behalf of the District Court, clearly erred in finding that the government had sustained its burden to prove that Mr. Flanagan was engaged in a drug trafficking offense. It is the government's burden of proof and normally the way that we do things at sentencing is the parties submit the evidence to be relied upon to the probation office, it's presented in a PSR, we have our objections teed up. The only evidence in this case is there were three grams of heroin on a table next to a digital scale and a pipe. I don't think we can say as a matter of law that three grams of heroin is a necessarily a distribution amount. And so if it's not a matter of law, we need then evidence to tip the scale. At least not where a defendant acknowledges that he's using a gram a day. Well, exactly. I mean, even if you were to say there's a presumption that more than a gram might be distribution, Mr. Flanagan rebutted that presumption. The undisputed facts are that this was three days quantity. And so if we are going to tip the scale, which again is about the burden of proof, the government needs to present more than just please infer from this that three grams is enough to say he must have been engaged in drug trafficking. So the government here mentioned these two other witnesses who had proffered that he was dealing drugs, not just using drugs. They didn't identify the witnesses. There wasn't anything else in the record. And the court relied on it because the court said that was a factor. But the defense didn't object. So what impact should that have? Well, I think that it still is insufficient evidence. Because we don't have any of the foundational details. First, I mean, it's the same thing that happened in the United States versus Gibbs, where the government appeared at sentencing and said, oh, actually we've got this great evidence. The time to submit that is in advance of sentencing to guide the . . . so the district court can actually find facts. I'm sorry. Go ahead. You could submit it at sentencing as well. You could call the witnesses then. Sure. Nothing would prevent you from doing that. Sure. But that didn't happen. But that didn't happen. No advance notice of these two, the two witnesses or the proffered statements? Nothing in the record shows that. Now, that maybe gets to Judge St. Eve's question of, well, if there's no objection, then is that a problem? Are you sure with no advance notice, though, under our recent decision in Wood, why do you have to object? Oh, I don't . . . I mean, I think that this objection is preserved, right? This popped up at sentencing. That's what I'm saying. Yeah. There's nothing in the record, right? If there was advance notice, it would be a different ball game. Oh, absolutely. If the government had either sent to the probation officer or submitted in a filing, we intend to rely on the statements of these witnesses, then the adversarial process works because Mr. Flanagan can say these witnesses are unreliable or we have their 302s or whatever it is to question whether, in fact, what they're saying is accurate. Is that what you need, advance notice of, though, or is it advance notice of the dispute over the enhancement? So if the government has advance notice that you're disputing this enhancement, that it's in furtherance of another crime . . . Right. At that point, they need to respond with evidence. Right. If Mr. Flanagan had no objections to the PSR and we're here on plain error review, it's very different, right? There's no contest about what happened below and we would have the burden. I mean, this case, really, a lot of it is about who has the burden with ambiguous evidence where we've got evidence on both sides. What happens, the search of Mr. Flanagan's apartment revealed facts that are susceptible to multiple interpretations, but you have to have some evidence if you are the proponents of the enhancement. Well, and isn't that . . . I mean, we're spending a lot of time talking about these witness statements, but isn't the substance of the witness statements an issue as well? Because at most, they say he was a dealer and a user. And just being a dealer doesn't get you the enhancement outright. The government has to prove by a preponderance of the evidence that in this specific situation, these drugs here were drug trafficking drugs in close proximity to firearms. That's exactly right. What Application No. 14B does, the reason we're debating this is because it says there is a presumption if those drugs, if the guns are in close proximity to drug trafficking drugs, then there's a presumption that you must have possessed those guns in connection to those drugs. If you're dealing generally without a firearm, but it happens that you have a personal supply at home that is next to your other personal effects, that's not possessing a firearm in connection with . . . So, Mr. Henderson, you know our law pretty darn well in this area. What's the proper perspective to think about it from? Because you quite ably are focusing on the burden. Government bears it by a preponderance. Evidence looks like it's an equipoise. They don't carry the burden. What about after the finding is made, though, the district court applied the enhancement, we have to apply clear air review there, right? So don't we have to be of the definite and firm conviction? You know, it's what a clearly erroneous fact is that way, right? And so if you look at it from that perspective, don't we tip an equipoise in favor of the government? No. And, you know . . . What's the right perspective? The right perspective is did the government produce enough evidence to permit the district court to make a finding that this was a drug trafficking offense? And what the clear air standard allows the court to do is to say it's clearly erroneous to find this as a drug trafficking offense if you don't have the evidence to support it. If instead you're relying on things like speculation and inference. So in our reply brief, we cited a recent case where that's how the clear air standard was applied. If we had debating evidence, if we had something more than please infer from three grams of heroin what the outcome is, then the clear air standard, I think, is tougher to meet. What about the scale? You have that three grams of heroin, you have the scale that's next to it, you have multiple guns that are close to it and, as the court said, readily available to protect it. And you have the DOJ regulations about user amount. Why wouldn't that be sufficient to tip the scale? For the reasons we've gone through in our brief, but the regulation is this amount may is, I think you could say presumptively, a distribution amount unless there is evidence of personal use. And, of course, we have evidence of personal use here. And so that doesn't tip the scale. A digital scale is just as consistent with personal use as it is with distribution. Somebody, especially if you're using heroin, you do not want to overdose. That's been a phenomenon that's been occurring. And, of course, it's next to the pipe, too. You have to keep in mind that there's actual evidence of personal use. So without anything more, the evidence the government might present is, for example, these witnesses. They might have witnesses testify and say, no, actually he was dealing and during his time in the firearm. But we've got a scene that's frozen in time, and we know nothing else about it. And when that happens, it is a clear error to say that the government has sustained its burden of proof. Thank you. Okay. Very well. Mr. Wood, good morning. Your Honor, may it please the Court, Bob Wood on behalf of the government, Mr. Henderson. So at the outset, in the government's view, this is all about the appellate standard of review, the clear error standard. The district court acknowledged this is a close call. There's nothing in the record to indicate why the witnesses weren't called. I'm not particularly eager to go into the substance. The witness part of this really troubles me. Yeah. And as a basic matter, I don't know the calculus there, but more to the point, it's not in the record. So I wouldn't be able to speak to it anyway. And the court relied on it. I will echo what Judge Scudder said. I am concerned that the court relied on these two unknown witnesses. And if we had that... Especially after you were put on notice that this enhancement was an issue. Yes. And if we had that and the quantity alone, you know, I can't speak to the broader government's view. My view is that this case would be Gibbs because that is vouching for evidence that's not fairly in the record. That's not... I shouldn't say fairly. That's not substantially in the record. And it does not... It's not the makings of the kind of finding of fact that would be due. How do we go in, though, to this factual record and just excise out the witness statements? I think that is the way that I understand the clear error standard. It's not just the firm conviction, but also this notion that no record evidence supports the finding. And that's why our position is that the nature and quantity of the guns, we pointed to some First Circuit cases on that topic, the quantity, sure. The lack of employment history, these are the other things the judge relied on. But the judge said it's a close call. And he's relying on proffered evidence from two unknown witnesses, and we have no idea how much weight he put on that, which is something, in my view, he shouldn't have been relying on. Yes, Your Honor. Under Gibbs, I think that's correct. That's just... That's the right view of the court's potential reliance on that, and the court noted it. So why wouldn't that be clear error, even under how you're articulating the standard? Well, the clear error standard is, as I understand it, as it applies to these enhancements and various factual findings, a no evidence in the record to support the finding standard. And there are, I think Your Honor listed maybe three categories of evidence to support the finding, and there are other categories, there's at least two other categories, the prior dealing convictions and the lack of employment record, are the other categories of evidence, specific evidence, I shouldn't just say categories, the judge relied on. And I may be getting this wrong, but even in the face of an errant reliance on evidence not properly before the court, I take a similar view to Mr. Henderson about the notice and objection, the way that played out here. There's no waiver or forfeiture or anything like that. You have this collection of evidence, one piece perhaps is errant, there's a stray remark about it from the judge, looks like reliance, but it's among several pieces of evidence. Well, I mean, it is reliance, right? I mean, there is some weight put on it. There's some weight put on it. Yeah, and then of course the witnesses who said that the defendant was both a user and a dealer. Sure. That sounds like reliance. It is. I'm not, you know, maybe rhetorically it sounded like I was denying this, but it's reliance. It is also for sure the case, and I was going to say, I fully lack the eagerness to defend the substance of that evidence, both because it is essentially lacking, and because as Your Honor said, it goes both ways. So there isn't, even if, you know, we don't know what they would have said, that's a problem. So is there, on that particular point, and I think Judge Jackson and Cumey's question is a really good one, because is it possible that you not only have clear error here, but you may also have a legal misunderstanding of what the trigger is, what the requirement is to, you know, for the enhancement to apply. In other words, the question is not, is he a drug dealer, right? Well, the question is whether… Just under the terms of it. The question is whether there's a distribution proved in connection with, as Your Honor put it, this drug, this gun possession, and the, I don't see a legal error… Engaged in a drug trafficking offense, right? Right. So that means, you know, in the circumstances that they find it, not whether he makes a living as a drug dealer. Sure, but the district court is permitted to rely on circumstantial evidence suggesting that he makes a living as a drug dealer in support of, not alone, but as corroborating evidence tied to the other pieces of evidence. Yeah, fair enough though, but do you think that the, when you take the witness statements, the point that you just, you made a second ago, that the witness statements are not super clear, right? They're kind of double-edged on that. Sure. Right? That there was a legal misunderstanding of when, you know, the 2K2.1 enhancement applied here. I don't see that. I also don't see that as an argument that's been raised. Well, then what's left? When you take out the witness statements, what's left to help the district court show that those three grams right there are trafficking three grams. You've got what you referred to as the lack of employment history. So that's the court's speculation there, that he must be a drug dealer with those three grams because how else could he afford three days at a time as opposed to one day at a time? I don't know where that comes from. Well, there's that, there's the nature and quantity of the guns, which the court clearly relied on. But that seems to me to be the predicate issue. We're here because of the guns. We're here because they found four guns in his apartment. So that's not the answer to whether the enhancement applies. Respectfully, Your Honor, I see a logically, a major distinction between simple gun possession as the heart of the charge. And, you know, the First Circuit cases we said in our brief delineate this as well. And relying on the nature and quantity of the guns at issue and the fact that they're spread around the home as indicative of not mere possession. But even the one jail call the government points to doesn't seem to refer to drug trafficking at all. He just talks about, I like to keep my guns around me. Sure. And we cited that as additional, beyond this logical distinction argument, as additional evidence that he saw those guns as critical to his safety. And there are a lot of pieces of evidence in this record that could go both ways. Why don't you have it as evidence of drug trafficking? It is evidence, well, it's evidence that could support drug trafficking or drug possession. And in that sense, it is evidence of drug trafficking, along with several other pieces of evidence. And the clear air standard is, in the government's view, what guides this case. I take your point about the sort of equipoise of various pieces of evidence. The judge engaged in a discussion of each and viewed more than one of them as pushing this over the line. Mr. Wood, you've indicated in response to Judge Jackson a cue me that the court relied on the evidence that he wasn't working and had to fund this somehow. I don't see the court relying on that. I know that argument was made, but if I'm missing something, please point it out to me. I don't see the court, when it ruled on this particular enhancement, saying, and he wasn't working and how else could he have afforded this heroin? As I read the sentencing transcript, I see on page 51 the judge taking the opportunity of discussing, and sort of it's consistent with the way the judge... Sorry to interrupt, but I know you're running out of time. By the time we get to page 51, we are talking about 3553A factors and not talking about the enhancement. I'm talking about the enhancement at 25 and 26 of the transcript and 27. That's where the court specifically rules on the applicability of 2K2.1B, and I don't see the court relying on that fact in making its holding that these firearms were in furtherance of drug distribution. Sure. My understanding of a district judge's capacity to make a record is not that it's siloed in the sense that the judge can't reinforce a factual finding with something on his mind later. If it's clear that's what he's doing. Maybe I'm reading it incorrectly. I see that he cleans up his ruling a page down with the reference to the prior dealing convictions, and I see this as sort of a later stage of that, and cabining judge's ability to clear up their records in that sense, I think, would be the wrong step because it's hard to make these records. One final question for you from me, and that is what of our case law in this area you think best supports you? You lean on LePage, and I think Mr. Henderson rightly calls you out on that. This case is, candidly, as close to LePage as I've seen. LePage has categories of evidence that match up, that are all stronger, but the case law that best suits this is the comprehensive case law and clearer review and matters affirming when the record contains some evidence to support the decision. With that, I just want to open it up. Okay. Very well. Thank you. So the clear error standard, as the court put it a couple months ago, the conclusion that a decision maker rested on speculation is not an uncommon basis for clear error reversal. If the district court, well, I think I've made my point on that. The last thing I would say is I still don't understand the government's argument that the nature and quantity of guns has any role to play in terms of whether the drugs were intended for distribution. There's no evidence in the record to support that. I suppose expert testimony could say this particular firearm is associated with drug trafficking, but that's the type of speculation. I thought the argument was more not that it supports that the drugs themselves were for use in furtherance of that distribution. Like having four guns means you're more likely? Yes. That's how I understood the argument. Oh, okay. Yeah, and again, we're just speculating about what that might be. I mean, it sounds like he's an avid gun collector. That's what the phone call indicated. It's all speculation. Under the couch? I'm not sure about that. Well, I mean, he kept them in his apartment. Well, I mean, the other thing, it's very possible that having an addiction that is that severe to heroin means that he's going to have heroin on him about every time, and he sure doesn't want to get ripped off. And so he's got the guns for personal protection. Right. And that? I don't know. I mean, we're speculating either way on it. Right. That's the main point, is if the government wants to prove this enhancement, we need more about all the possibilities. Thank you. Okay. Very well. Thanks to both parties. We'll take the case under advisement.